No. 19,340.

Max Toland, Justice of the Peace, etc. *v.*
Lawrence A. Strohl.

(364 P. [2d] 588)

Decided September 5, 1961.

Mr. RICHARD THOMAS, Mr. LEO W. RECTOR, Mr. JERRY ALAN DONLEY, Mr. RICHARD W. HANES, for plaintiff in error.

Mr. ANDREW H. HITCHCOCK, Mr. DWIGHT K. SHELLMAN, JR., for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THIS action is before us on a writ of error to the district court wherein Strohl sought and obtained extraordinary relief under Rule 106 from an adverse judgment of Toland, as justice of the peace. The district court ruled that Toland was without jurisdiction to hear the case. Toland seeks review.

Strohl was involved in an automobile accident shortly before midnight on May 10, 1959, on U.S. Highway 24, East of Vona in Kit Carson County, Colorado. A Highway Patrolman, called to the scene by a passerby, arrived after midnight on May 11, 1959, where he interviewed both parties and observed the scene of the accident. He then informed Strohl that he was charging him with driving under the influence of intoxicating liquor and driving on the wrong side of the road. He

required Strohl to accompany him to Stratton, Colorado, where he contacted Toland, the justice of the peace. All parties proceeded to the City Hall where a summons was issued to Strohl and a complaint was drawn up by Toland. At approximately 2:30 A.M. at a hearing held before Toland, Strohl entered a plea of guilty and was promptly fined $125.00 and $4.00 court costs. Toland refused to accept Strohl's personal check for the fine and costs and the latter was taken to the County Jail, where he was held until his wife arrived later that day with sufficient cash to pay the fine.

On May 21, 1959, Strohl, through counsel, filed a complaint in the district court alleging the facts set forth above, and further alleging that he plead guilty without knowledge that it would probably mean loss of his driver's license and in the belief induced by the officer that he could pay the fine and proceed on his way. He sought the following relief:

1. A citation to the justice of the peace directing him not to proceed further in connection with the judgment entered against Strohl;

2. A transcript of the record and proceedings had before said justice be certified to the District Court;

3. An order vacating the plea of guilty entered by Strohl and returning the fine and costs levied thereon and directing the entry of a plea of not guilty and the fixing of a fair and reasonable bond for the plaintiff, Strohl.

On the same day, May 21, 1959, an order and a citation were issued directing the justice of the peace to certify a transcription of the record and proceedings before him to the district court and prohibiting further proceedings therein, and to show cause why such judgment should not be set aside.

A "Transcript of Docket" was *made up* and filed in the district court by Toland on May 25, 1959, and an answer in his behalf was filed by the district attorney on June 2, 1959. Strohl's counsel then filed a document containing

points and authorities in support of plaintiff's action under Rule 106, Colo. R.C.P. Finally, a "Supplement to Trial Transcript" was filed by Toland on June 10, 1959.

At the hearing in the district court testimony was received with respect to the proceedings in the justice court and on the issue of jurisdiction. At the conclusion of all the testimony the court entered the following findings and conclusions:

"Now the testimony in the present case makes it perfectly clear that what happened here was that the defendant below, the plaintiff here, was in effect arrested by a State Patrolman and taken from the scene of the accident. The patrolman did not witness the accident nor did he, according to anything in the record or in the testimony, observe any offense committed by the plaintiff here. He took the plaintiff to the nearest Justice of the Peace and there issued his summons or notice. Based upon the summons or notice the Justice of the Peace issued a criminal complaint, which was sworn to by the arresting officer. This is somewhat 'the cart before the horse' because the complaint should be filed, according to our Constitution, before any warrant can issue or arrest be made, and yet this plaintiff, defendant below, had been arrested, given a summons or notice and thereafter a criminal complaint issued.

"Other features of the case of course make it at first blush, a case that more or less shocks the conscience of the Court; that after midnight a defendant will be taken into court immediately and forthwith and tried, whether on plea or otherwise, convicted and sentenced, smacks of denial of due process of law. The Court feels it is not necessary to go into those features in this case because I think the constitutional provision has not been complied with and therefore the fundamental rights of the plaintiff here, defendant below, have been denied him.

"There having been no compliance with the constitutional provision, it is the ruling of the Court that the Justice of the Peace Court below in this cause was with-

out jurisdiction to proceed either to accept a plea or impose sentence.

"THE ORDER OF THE COURT will be that the proceedings below be set aside and vacated; the entire proceedings, not just the plea of the plaintiff, because no jurisdiction was ever obtained over this plaintiff in the court below. The defendant here, the Justice of the Peace, the court below, will be ordered to return to the plaintiff the fine which was paid in the null and void proceedings below."

In seeking reversal of this order Toland urges that:

1. It was improper for the district court to entertain the extraordinary writ under Rule 106 (a) (4) because plaintiff had a plain, speedy, adequate remedy, by way . of appeal to the county court under the provisions of Senate Bill No. 182, approved May 11, 1959, relating to appeals from justice of the peace, which amends C.R.S. '53, 79-13-2, Sec. 1, and authorizes an appeal where a plea of guilty has been entered.

2. The matter being in certiorari the court erred in taking oral testimony; that the court was limited to consideration of the record prepared by him (Toland).

3. The District Court erred in holding that: a. A Colorado State Patrolman is powerless to arrest without a warrant when the acts are not committed in his presence; and b. He lacked jurisdiction to accept a plea and to impose a sentence.

 1. *Propriety of the Remedy.* Rule 106 (a) (4), Colo. R.C.P., provides that relief may be obtained "where an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and *there is no plain, speedy and adequate remedy,*" with the further provision that "review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its .discretion." (Emphasis ours.) Toland contends that a plain, speedy and adequate remedy existed by virtue of Senate Bill

No. 182, signed into law by the Governor on May 11, 1959, which provides for an appeal in a case such as the present one. As so amended the statute now reads:

"79-13-2. Appeals-costs-bond-notice. — (1) Appeals from judgments of justices of the peace to the county court shall be granted in all cases *including those where a plea of guilty has been entered* and excepting those where judgment is confessed. * * *" (Emphasis ours.) (Italicized portion had been omitted from previous statute.)

This bill was signed by the Governor at 10:05 P.M., May 11, 1959. The plaintiff's plea of guilty had been entered at approximately 2:30 or 3:00 A.M., that same day. Whether the amendment could operate retrospectively was at least doubtful even to a prudent lawyer making a realistic evaluation of possible remedies. See C.R.S. '53, 135-1-7. Considering the presence of this dilemma it can not be said that a plain, speedy and adequate legal remedy existed, and thus Strohl's lawyers were justified in proceeding as they did. *Justice Court of Montezuma County v. Coleman,* 137 Colo. 12, 320 P. (2d) 336; *Shotkin v. Denver Publishing Co.,* 119 Colo. 463, 204 P. (2d) 1080; *Willoughby v. George,* 5 Colo. 80.

■ 2. *Propriety of taking evidence in the course of hearing under a writ of certiorari.* Rule 106 (a) (4) sets up the correct procedure in a case such as the present one. Essentially it is a review proceeding of an inferior tribunal and thus testimony is not in order. *County Court of City and County of Denver v. Eagle Rock Gold Mining & Reduction Co.,* 50 Colo. 365, 115 Pac. 706, and *County Court of Phillips County v. People ex rel Chicago, B. & Q. R. Co.,* 55 Colo. 258, 133 Pac. 752. The limited scope of such hearings is indicated in *Mesch v. Board of County Commissioners,* 133 Colo. 223, 293 P. (2d) 300. However, having these restrictions in mind, how is a district court to determine whether a justice of the peace exceeded his jurisdiction when it has no record before it? We are not, in the circumstances, disposed to condemn the court's action in hearing testimony bearing

on the issue of jurisdiction alone, although recognizing that the court could not, in such proceedings, determine disputed questions of fact. *County Court of City and County of Denver v. Eagle Rock Gold Mining & Reduction Co.*, supra.

██ 3. *Validity of the Proceedings Before the Justice of the Peace.* There is sufficient undisputed information in this record to support a holding that the justice of the peace acted beyond his jurisdiction in accepting the plea of guilty and sentencing Strohl on the spot. We need not, therefore, be concerned with the basis upon which the district court determined the question of jurisdiction. From the record it is apparent that the arrest was made after midnight and that the case was disposed of between 2:00 A.M. and 3:00 A.M. The accused was charged with driving a motor vehicle while under the influence of alcohol. We can accept the statement of the justice of the peace that he warned the accused that, upon his plea of guilty, he could be subjected to a fine and imprisonment. It is nowhere suggested, however, that the accused was informed that his plea of guilty would probably result in the loss of his driver's license. Also, the evidence strongly suggests that the accused was encouraged to enter the plea, and that implicit in this encouragement was the promise that he could pay the fine and go on his way. We note that the offense with which the accused was charged is a serious one, involving grave consequences, and our decisions have recognized its criminal nature and have required that safeguards available in criminal cases must obtain. See *Canon City v. Merris,* 137 Colo. 169, 323 P. (2d) 614; and *Davis v. City and County of Denver,* 140 Colo. 30, 342 P. (2d) 674.

██ In view of the serious consequences which follow the entry of a plea of guilty to such charge, the circumstances surrounding the disposition of this case, namely, summary disposal immediately after arrest (notwithstanding the belief of the officer, evidenced by the fact

that he filed the charge, that the accused was under the influence of liquor) constitutes a serious deprivation of the constitutional right of the accused to a fair trial. It is, of course, axiomatic that justice delayed is justice denied, but there are limits to the acceleration process, and the instant procedure was so unjustifiably sudden as to constitute a violation of the constitutional guarantee of procedural due process of law. The problem is presented and discussed in a leading Pennsylvania case, *Commonwealth v. O'Keefe,* 298 Pa. 169, 148 Atl. 73, where the court said:

"A prompt and vigorous administration of the criminal law is commendable, and we have no desire to clog the wheels of justice. What we here decide is that to force a defendant, charged with a serious misdemeanor, to trial within *five* hours of his arrest, is not due process of law, regardless of the merits of the case. If it can be done here, it can on a charge of any other misdemeanor; if so, a man may be walking on the streets, free, in the morning, and on his way to prison, a convicted criminal, in the afternoon. We are constrained to hold that the haste shown in this case deprived the defendant of his constitutional rights, and the conviction cannot be sustained. 'It has been authoritively stated that the right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion.' 6 R.C.L. 443. As was said by Mr. Justice Coulter, in Brown v. Hummel, 6 Pa. 86, 97, 47 Am. Dec. 431: 'When the humblest citizen comes into this court with the constitution of his country in his hand, we dare not disregard the appeal.'" (Emphasis ours.)

This case is cited with approval in *Powell v. Alabama,* 287 U.S. 45. A pertinent comment is also found in the Georgia case of *Harris v. State,* 119 Ga. 114, 45 S.E. 973. There the Supreme Court of Georgia said:

"1. Undue haste in the administration of the criminal law is as much to be condemned as unnecessary delay. The true course lies between these two extremes. The

law rests the determination of questions relating to the time of trial in the discretion of the trial judges; and this court will not interfere with their rulings on the subject, unless it is manifest that there has been an abuse of discretion. * * * "

The breadth and scope of the due process guarantee is described most articulately in the opinion of the Supreme Court, per Mr. Justice Frankfurter, in *Rochin v. Calif.*, 342 U.S. 165, 169, as follows:

"However, this Court too has its responsibility. Regard for the requirement of the Due Process Clause 'inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings (resulting in a conviction) in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses.' Malinski v. New York, supra, at 416-417. These standards of justice are not authoritatively formulated anywhere as though they were specifics. Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental,' Snyder v. Massachusetts, 291 U.S. 97, 105, or are 'implicit in the concept of ordered liberty.' Palko v. Connecticut, 302 U.S. 319, 325."

It is apparent that the kind of hasty, ill considered, dark of night disposition which here occurred is repugnant to and irreconcilable with the due process guarantee of both the Colorado Constitution (Art. II, Sec. 25) and the Constitution of the United States (Fourteenth Amendment).

We reject the contention of Toland that the accused waived his rights. Cf. *Geer v. Alaniz*, 138 Colo. 177, 331 P. (2d) 260. An effective waiver requires voluntary action based upon knowledge of consequences.

In the instant case, even a full reading of the penalty

section of the statute would not apprise the accused of the consequences of the plea. Furthermore, if, as the charge suggests, the accused was under the influence of liquor, he could not give an effectual waiver. Cf. *In the Matter of Burke*, 34 N.J. Super. 460, 112 A. (2d) 807.

The fact, if it be a fact, that the accused evidenced a desire to accept the impetuous proceedings tendered does not in the present circumstances justify the action which was taken. Nor does the fact that the justice's interruption of sleep may have been motivated by desire to accomodate the accused constitute a sufficient reason.

■ In the final analysis we conclude that we can not in good conscience approve as meeting the standards of due process of law the summary, hasty, middle of the night justice which was here dispensed. Concluding as we do that the proceedings were not an acceptable substitute for a trial in a court of justice we are constrained to hold that the cause must be remanded for a new trial. The district court's appraisal of the proceedings was correct, but its holding that they were void must be reversed.

, The judgment is reversed and the cause remanded to the trial court with directions to vacate the judgment as entered and in lieu thereof to enter a judgment directing the justice of the peace to vacate the former conviction and judgment, permit the defendant to enter such plea as he may be advised and thereupon to afford such defendant a trial on the charges preferred in harmony with the views of this court as expressed in *Canon City v. Merris*, supra. That pending such further proceedings the parties be placed in *status quo* by refund to the defendant of the sums paid as fine and costs.

Mr. Justice Day did not participate.